1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11

NAOMI TAPIA, individually and on behalf of other members of the general public similarly situated,

                                    Plaintiff,

        v.

ZALE DELAWARE INC.,

                                    Defendant.

CASE NO. 13-CV-1565-BAS (PCL)

ORDER GRANTING MOTION FOR CLASS CERTIFICATION

[Doc. No. 44]

12
13
14
15
16
17

        Plaintiff Naomi Tapia moves to certify two classes of hourly employees in her

18 lawsuit against Defendant Zale Delaware Inc. for alleged violations of California's

19 labor laws and the federal Fair Labor Standards Act (FLSA).  The Court finds this

20 motion suitable for determination on the papers submitted and without oral

21 argument.  *See* Civ. L.R. 7.1(d)(1).  Having considered the briefs, evidence, and

22 controlling law, the Court grants the motion.[1]  The Court finds that Plaintiff has

23 demonstrated that common questions of law and fact predominate over individual

24 issues, such that a class action is a superior method for adjudicating the State law

25

26        [1]The Court considered all the arguments.  To the extent that this Order does not
discuss every point raised by counsel, the Court concluded that it was unpersuasive or
27 immaterial at this time.  For example, the Court declines to rule on the parties list of
evidentiary objections. "Since a motion to certify a class is a preliminary procedure,
courts do not require strict adherence to the . . . Federal Rules of Evidence."
28 *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 505 (E.D. Cal. 2014) (citing *Eisen
v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

claims.  Plaintiff has also met the standard to conditionally certify a class under the FLSA.

## I. **Background**

Plaintiff Tapia was a sales representative for Defendant Zale, a jewelry store, between May and November 2012.  Tapia Decl. ¶ 3 (ECF 44-3).  She worked at the Imperial Valley Mall location in El Centro.  Compl. ¶ 29.

Plaintiff's First Amended Complaint alleges that Defendant violated several provisions of the California Labor Code by failing to issue complete and accurate wage statements, pay overtime compensation, and provide meal and rest breaks.  She also seeks relief under the FLSA.  Plaintiff further alleges that these failures violate California's Unfair Competition Law and Private Attorneys General Act.

The Sullivan Law Group, APC, filed the action as a potential class action.  The parties conducted limited discovery on the class certification issue.  In addition to taking the depositions of the Plaintiff and two of Defendant's corporate representatives, both sides hired experts to analyze a sample of payroll statements.  Defendant filed declarations from several store managers to contradict Plaintiff's testimony.

Plaintiff seeks to certify a California class of 1,600 current and former hourly, nonexempt employees.  Plaintiff identifies six issues:  (1) failure to pay overtime compensation; (2) failure to provide wage statements that accurately state the overtime rate; (3) failure to provide a timely meal period, alteration of records, and failure to pay the statutory penalty; (4) unlawful meal period policy; (5) unlawful rest period policy; and (6) a derivative claim for former employees.

Plaintiff also seeks to certify a nationwide class of 20,000 retail workers, based on her allegation that Defendant failed to pay overtime wages in violation of the FLSA.

13CV1565

## II. **Standard for Class Certification Pursuant to Rule 23**

The "class action device was designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). "[A] class action[] may only be certified if the trial court is satisfied, after a rigorous analysis," that Plaintiff has established the four requirements of Federal Rule of Civil Procedure 23(a) and one of the subdivisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 161 (1982).

The four prerequisites of Rule 23(a) are that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law of fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class."

As relevant to this case, Plaintiff must also demonstrate that her action is appropriate under Rule 23(b)(3). This subdivision permits a class action when "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. Rule Civ. P. 23(b)(3).

"The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's causes of action." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (internal quotation marks and citation omitted). But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

13CV1565

1   **III.  Analysis of Rule 23 Requirements for the California Class**

2          **A.  Number of Potential Class Members**

3          Plaintiff reports that there are 1,660 employees in the proposed class.

4   Defendant does not dispute that joinder of all members would be impractical.

5          The Court finds that the number of employees involved satisfies Rule

6   23(a)(1).  *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 261-62 (S.D. Cal. 1988)

7   (threshold number is forty members) (citations omitted).

8          **B.  Common Issues**

9          To satisfy Rule 23(a)(2), Plaintiff must show that there are common questions

10  of law or fact.  The claims "must depend upon a common contention . . . that is

11  capable of class resolution – which means that determination of its truth or falsity

12  will resolve an issue that is central to the validity of each one of the claims in one

13  stroke."  *Wal-Mart*, 131 S. Ct. at 2551; *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952,

14  957 (9th Cir. 2013).

15         As noted, Plaintiff lists six common issues.  Defendant's opposition brief

16  combined the issues to five.  The Court agrees with Defendant's reorganization of

17  Plaintiff's list, but concludes that Plaintiff's claims meet the commonality

18  requirement of Rule 23(a)(2).  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581,

19  589 (9th Cir. 2012) ("commonality only requires a single significant question of law

20  or fact").

21              **1.  Failure to Pay Overtime Compensation**

22         Plaintiff asserts that Defendant has a standard policy that deducts time from

23  its employees' records before it pays wages.  Plaintiff alleges that by shaving

24  minutes from the time records, Defendant fails to pay overtime wages in violation of

25  State law.  California Labor Code § 510(a) provides:  "Eight hours of labor

26  constitutes a day's work.  Any work in excess of eight hours in one workday . . .

27  shall be compensated at the rate of no less than one and one-half times the regular

28  rate of pay for an employee."  *See also* Cal. Code Regs. tit. 8, § 11040(7)(A) (2016)

1  (requiring employer to keep "accurate information," including "when the employee
2  begins and ends each work period" and "total daily hours worked") (hereinafter
3  IWC Wage Order 4).[2]

4       The Court finds that Plaintiff's overtime compensation claim presents a
5  common issue suitable for class resolution.  Namely, whether Defendant fails to
6  provide overtime compensation for employees who work more than 8 hours a day or
7  40 hours a week.

8       First, Plaintiff established that Defendant uses the same "Point of Sale"
9  computer system to record the time its hourly employees work at the stores.  *See*
10  Martin Depo. 20-21 (ECF 44-6).  Defendant's Timekeeping manual confirms that
11  all employees must use the Point of Sale computer to clock in and clock out to
12  record the "actual time worked."  Engleson Decl. Ex. G (on page 2, the manual
13  instructs employees to clock in at the start of and end of their shifts, as well as
14  during eligible meal breaks) (ECF 44-11).  Thus, Plaintiff is able to determine from
15  Defendant's time records – to the minute – the time every employee in the class
16  clocked in and clocked out.  Engleson Decl. ¶ 14 (ECF 44-4).

17       Next, Plaintiff relies on the Itemized Wage Statements produced by
18  Defendant.  These Itemized Wage Statements show the amount of regular and
19  overtime compensation that Defendant paid to each employee for each pay period.
20  *Id.* ¶ 13.  By matching the employee's identification number on the wage statement
21  to the time records, Plaintiff is able to evaluate whether each employee lost
22  overtime compensation.  *Id.* ¶ 12.  A single forensic expert can create an algorithm
23  to analyze every time and wage record to ascertain which specific employee lost

24
25

26  _____

[2]The Industrial Welfare Commission (IWC) formulates employment regulations
27  called "Wage Orders."  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 581 (2000).
"The IWC's wage orders are to be accorded the same dignity as statutes."  *Brinker*
28  *Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1027 (2013).  Both must be liberally
interpreted to give effect to purpose of protecting and benefitting employees.  *Id.* at
1026-27.

regular or overtime pay due to Defendant's uniform compensation policy. *Id.* ¶¶ 14-15.

Plaintiff uses Tapia's payroll records to illustrate how the standard timekeeping system operates to deprive hourly employees of overtime pay. *Id.* ¶¶ 7-10, 31. On October 14, 2012, Tapia worked nine hours and three minutes. *Id.* ¶ 9 (citing Ex. C) (Tapia's time record). Under California law, Tapia was entitled to earn time and a half for the one hour and three minutes she worked over the eight-hour day. Cal. Labor Code § 510. Turning to her corresponding wage statement Defendant "shaved" the time to nine hours, thereby depriving Plaintiff of three minutes of overtime pay on that day. Engleson Decl. ¶¶ 9-10 (citing Ex. F).

The Court concludes Plaintiff has shown that Defendant's uniform payroll policy and practice is suitable for class certification. Plaintiff has fulfilled the commonality element of Rule 23(a)(2) by establishing that "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164-65 (9th Cir. 2014) (citations omitted).

In an effort to persuade the Court not to certify a class, Defendant argues the merits of its liability. Defendant raises the affirmative defense that its "rounding" practice is legal. *See's Candy Shops, Inc. v. Super. Ct.*, 210 Cal. App. 4th 889 (2012). The argument fails for two reasons.

First, this is not the time to conduct "an in-depth examination of the underlying merits" or "to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). "To hold otherwise would turn class certification into a mini-trial." *Id.*; *Jimenez*, 765 F.3d at 1166 n.5 ("Whether any of these common questions are ultimately resolved in favor of either side is immaterial at this class certification stage") (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,

722 F.3d 838, 857 (6th Cir. 2013) (noting that if a defendant has a strong argument against classwide liability, it "should welcome class certification" as that allows it the opportunity to resolve claims of all class members at once.")).

Second, it is a question of fact whether an employer's method of rounding "on average, favors neither overpayment nor underpayment." *See's Candy*, 210 Cal. App. 4th at 902 (citations omitted). Even if it were necessary for the Court to analyze the rounding issue to decide the class certification motion, the parties have presented conflicting evidence about the long-term impact of Defendant's practice on the hourly workers. The record shows that this fact question can be resolved in the instant class action.

California adopted the federal standard for rounding. *Id.* at 902 (citing 29 C.F.R. 785.48 (2011)). "As long interpreted by the federal courts, this 'regulation permits employers to use a rounding policy for recording and compensating employee time *as long as the employer's rounding policy does not 'consistently result[] in a failure to pay employees for time worked.'" Id.* (quoting *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1126 (C.D. Cal. 2011)) (emphasis added). If the evidence shows that an employer's rounding policy "systematically undercompensate[s] employees," then the employer will have failed "to compensate the employees properly for all the time they have actually worked." *Id.*

Defendant argues that its payroll policy is neutral on its face and in practice. Defendant points to testimony by its corporate representative explaining the Point of Sale computer system. Martin Depo. 20-21 (ECF 44-6); *id.* 67 ("punches are rounded" and "[b]oth [the old and new software] systems use the same approach towards rounding."). Defendant's Timekeeping manual confirms that "[d]uring the system calculation to add the hours worked for the day, the system rounds time to the nearest quarter hour." Engleson Decl. Ex. G at 3 (ECF 44-11).

13CV1565

1    Nonetheless, the parties presented competing expert reports on the impact of

2    on hourly employees.[3]  The statistical analysis of the wage and time evidence

3    demonstrates that Plaintiff has raised a common question that will produce a

4    common answer to a crucial issue.  *Wal-Mart*, 131 S. Ct. at 2552.  By going beyond

5    the allegations in her complaint, Plaintiff has "affirmatively established" that the

6    overtime compensation claim meets the commonality requirement.

7    In sum, Plaintiff identified a common question of California labor law and

8    presented sufficient evidence to support a finding that other employees may have

9    suffered a similar loss.  *Wal-Mart*, 131 S. Ct. at 2551; *Jimenez*, 765 F.3d at 1164-65.

10   ## 2. Inaccurate Wage Statement

11   Plaintiff asserts that the accuracy and completeness of Defendant's wage

12   statements presents another common issue suitable for class treatment.  Specifically,

13   Plaintiff alleges that employees cannot ascertain from the face of their paychecks

14   the total hours worked and the overtime rate of pay.

15   California law requires an employer to list "all applicable hourly rates in

16   effect during the pay period and the corresponding number of hours worked at each

17   hourly rate by the employee."  Cal. Lab. Code § 226(a)(9).

18   In 2002, the Division of Labor Standards Enforcement (DLSE) issued an

19   opinion letter concerning the "explicit requirements" of the itemized wage statement

20

21

22

23   _____

24   [3]Defendant's expert concludes that both systems have a neutral impact because, on average, the employees in the sample gained from two to twenty seconds per day.

25   Aukstikalnis Decl. ¶¶ 13-14 (ECF 49-17).  Dr. Aukstikalnis analyzed the Plaintiff's personnel records and found that Tapia gained two minutes of compensable time due to the time-rounding system. *Id.* ¶ 16.

26   Plaintiff's expert analyzed a sample of wage statements and found that employees were not being fully compensated. Fountain Decl. ¶¶ 8-18 (ECF 50-3). Dr.

27   Fountain's analysis showed that 56% of the employees were disadvantaged by the Defendant's method and that employees lost eighty-three hours of overtime

28   compensation. *Id.* ¶ 17.  In his opinion, neither of the Defendant's two computer systems have a neutral effect. *Id.* ¶ 18.

13CV1565

1    statute.[4]  Dept. of Industrial Relations, DLSE, Acting Chief Counsel Anne Stevason,

2    Op. Letter No. 2002.05.17, at 2, Lab. Code § 226 (May 17, 2002),

3    http://www.dir.ca.gov/dlse/opinions/2002-05-17.pdf.  That letter states:  "As a

4    general rule, the obligation to list the total hours worked during the pay period can

5    only be satisfied by listing the *precise, actual number of hours worked*."  *Id.* at 3

6    (emphasis added); *id*. at 5 ("*total hours worked* necessarily includes all actual non-

7    overtime hours and all overtime hours worked") (emphasis in original).  The DLSE

8    explained that "[t]he reason for this requirement is simple enough – it is designed to

9    provide the employee with a record of hours worked, and to assist the employee in

10   determining whether he [or she] has been compensated properly for all of his or her

11   hours worked."  *Id.* at 3.  "The failure to list the precise number of hours worked

12   during the pay period conflicts with the express language of the statute and stands in

13   the way of the statutory purpose."  *Id.*

14        The Court is persuaded that Plaintiff's claim that Defendant violated §

15   226(a)(9) is a legal issue that can be determined on a class basis.  *Boyd v. Bank of*

16   *Am. Corp.*, 300 F.R.D. 431, 440-41 (C.D. Cal. 2014).

17        Defendant does not dispute that the company uses the same format for all

18   hourly workers' paychecks.  *See* Peek Depo. 99 (ECF 44-5).  This provides Plaintiff

19   with a common means of proof.

20        Defendant uses decimals, rather hours and minutes to reflect time.  For

21   example, Tapia's August 9, 2012 statement listed her hours as "17.25."  *Id.* 102-04;

22   Engleson Decl. Ex. E (ECF 44-9).  Defendant's corporate representative was

23   uncertain whether that meant seventeen hours and twenty-five minutes *or* seventeen

24   hours and one quarter of an hour (fifteen minutes).  Peek Depo. 102-04.

25   Consequently, this uniform policy and practice presents a common question.

26

27        [4]This agency enforces California's labor laws.  "'The DLSE's opinion letters,
     while not controlling upon the courts by reason of their authority, do constitute a body
28   of experience and informed judgment to which courts and litigants may properly resort
     for guidance.'"  *Abdullah*, 731 F.3d at 958 (quoting *Brinker*, 53 Cal. 4th at 1029 n.11).

1       As to the second alleged flaw, "hourly rate of pay," Defendant does not

2  dispute that its standard wage statement does not expressly list the overtime rate.

3  Engleson Decl. ¶ 16 & Ex. F (ECF 44-4 & 44-10).  Instead, Defendant suggests that

4  its statements implicitly comply because the employee can calculate the overtime

5  rate by using simple math.

6       The parties devote large parts of their briefs to the relative merits of this

7  position.  The Court, however, declines to resolve the ultimate question of whether

8  Defendant's policy is lawful or unlawful. *Jimenez*, 765 F.3d at 1166 n.5;  *Ellis*, 657

9  F.3d at 983 n.8; *Faulkinbury v. Boyd & Assocs. Inc.*, 216 Cal. App. 4th 220, 233-34

10  (2013).  For purposes of Rule 23(a)(2), the Court finds that the action raises

11  common questions of fact and law about the accuracy and completeness of

12  Defendant's wage statements.  *Boyd*, 300 F.R.D. at 440-41.

13                 **3.  Meal Period Policy**

14       Plaintiff next alleges that Defendant's policy on when an employee may take

15  her thirty minute meal break violates California law.  Cal. Lab. Code § 226.7(b)

16  (incorporating the rule set by the applicable IWC Wage Order).  Plaintiff further

17  alleges that Defendant fails to inform its employees of their right to a penalty, equal

18  to one additional hour of pay, for each day that the meal period is not provided.  *Id.*

19  § 226.7(c); IWC Wage Order 4 ¶ D.  She contends that both issues center on

20  common questions of law.

21             **(a)  Timing of First Meal Break**

22       IWC Wage Order 4 applies to salespersons.  It states that "[n]o employer shall

23  employ any person for a work period of more than five (5) hours without a meal

24  period of not less than 30 minutes."  *Id.* ¶ A.  In *Brinker*, the California Supreme

25  Court analyzed similar language in Labor Code § 512(a) and held that it "requires a

26  first meal period no later than the start of an employee's sixth hour of work."  53

27  Cal. 4th at 1041; *id.* at 1042 ("first meal periods must start after no more than five

28  hours") (footnote omitted).

1    Plaintiff contends that Defendant's policy does not provide a meal break until

2    *after five hours* of work, instead of *before the end of the fifth hour*. Plaintiff cites a

3    Timekeeping: Meal and Rest Breaks handout, which states that "[h]ourly

4    employees may be eligible for meal and rest breaks based on their scheduled hours

5    and the state/provincial requirements for their store location." Engleson Decl. Ex.

6    M. at 1 (ECF 44-4). "*Unless otherwise required by state*/provincial law, employees

7    are *generally* provided an uninterrupted, unpaid 30-minute meal period *after* 5

8    consecutive scheduled hours of work depending on business needs, security and

9    adequate coverage." *Id.* (emphasis added). A chart summarizes the specific rules of

10   the various States and requires store managers to adhere to it. The listing for

11   California states "30 minutes *after* 5 hours." *Id.* at 2 (emphasis added). Plaintiff

12   contends this uniform, written policy is unlawful, and therefore eminently suited to

13   class treatment. *Brinker*, 53 Cal. 4th at 1032-33.

14   Defendant accuses Plaintiff of ignoring other passages in the written policies

15   showing it complies with the meal period law.[5] For example, the Timekeeping

16   manual also instructs store managers to "[s]chedule meal breaks between the 3rd

17   and 5th hour of work or as close as possible to the middle of an employee's shift."

18   *Id.* at 2.

19   Having reviewed the evidence, the Court agrees with Plaintiff that class

20   certification is appropriate on her claim that Defendant's written policy violates the

21   law governing the timing of the first meal period. The Court emphasizes that this is

22   not the time to decide the merits of whether Defendant's policy complies with

23   California's labor laws. *Eisen*, 417 U.S. at 178 ("In determining the propriety of a

24   class action, the question is not whether the plaintiff . . . will prevail on the merits.")

25   (citation omitted). For the purpose certifying a class, it is sufficient that Defendant

26   has a single policy. Plaintiff relies on a "common contention . . . that is capable of

27

28   [5]Defendant cites to three additional documents, however, it does not point the Court to any specific language. The Court reviewed the documents attached to Peek's deposition. Long Decl. Ex. 2 (ECF 49-3 at 22, 29, 30).

1 classwide resolution – which means that determination of its truth or falsity will

2 resolve an issue central to the validity of each of the claims in one stroke." *Wal-*

3 *Mart*, 131 S. Ct. at 2551 (citing a law review for proposition that there be "common

4 *answers*" driving the resolution of the litigation).

5                    **(b)** __Information about Meal Period Penalty Payment__

6            Plaintiff raises a related claim, namely, that Defendant never informs the

7 employees of their rights to a meal period penalty payment.

8            California Labor Code § 226.7(c) states that if the employer fails to provide

9 an employee with a meal period in accordance with State law, "the employer shall

10 pay the employee one additional hour of pay at the employee's regular rate of

11 compensation for each workday that the meal or rest or recovery period is not

12 provided."

13           Plaintiff analyzed the sample of payroll records and cites three examples

14 when an employee worked more than five hours, yet the corresponding wage

15 statements do not show payment of the statutory penalty.  Engleson Decl. ¶¶ 24-25

16 & Exs. I, J, K (ECF 44-4 & 44-13 to 44-15); *see* Peek Depo. 101-02 (explaining

17 where penalty payment would appear on wage statement) (ECF 44-5).

18           Defendant contends that it is not required to educate employees about penalty

19 payments.  In addition, Defendant challenges Plaintiff's evidence with declarations

20 by two managers.  Long Decl. Exs. 7 & 11 (ECF 49-8 & 49-12).  The Modesto store

21 manager states that, "to my knowledge" employees "who were not able to take a

22 lunch break or took a late lunch . . . received a meal period penalty of one hour's

23 pay."  Harmon Decl. ¶ 15 (ECF 49-8).  A manager at the Sherman Oaks store

24 testifies that if one of her employees is unable to take a timely break, she "will call

25 Human Resources and make sure the employee is compensated with a meal period

26 penalty payment for missing their break."  Melecio Decl. ¶ 23 (ECF 49-11).

27           The Court concludes that this issue raises common issues that can be jointly

28 tried.  Whether or not the Plaintiff will prevail on the theory of liability, she alleges

1    a uniform policy, or lack thereof, that is consistently applied.  Conversely,
2    Defendant might ultimately prevail on its theory that it has no legal duty to inform
3    its employees.  Regardless, this is the type of question that is "routinely and
4    properly" found suitable for class certification.  *Brinker*, 53 Cal. at 1033;
5    *Faulkinbury*, 216 Cal. App. 4th at 234 (court does not decide if policy violates the
6    law, but whether defendant's liability can be determined by facts common to all
7    class members).

8    ### 4.  Rest Period Policy and Practice

9    Plaintiff alleges that Defendant's standard policy and practice deprives its
10   employees of their statutory right to paid rest periods.

11   California law prohibits an employer from requiring an employee to work
12   during a rest period.  Cal. Lab. Code § 226.7(b).  The statute incorporates the
13   standards of the applicable Wage Order to determine the length and timing of the
14   breaks.  *Id.*  Here, IWC Wage Order 4 dictates that the "authorized rest period time
15   shall be based on the total hours worked daily at the rate of ten (10) minutes net rest
16   time per four (4) hours *or major fraction thereof*."  Cal. Code Regs. tit. 8, §
17   11040(12)(A) (2016) (emphasis added); *Faulkinbury*, 216 Cal. App. 4th at 236.  An
18   employee who works less than three and one-half hours, however, is not entitled to
19   a rest break.  Cal. Code Regs. tit. 8, § 11040(12)(A).

20   The phrase "'major fraction' long has been understood – legally,
21   mathematically, and linguistically – to mean a fraction greater than one-half."
22   *Brinker*, 53 Cal. 4th at 1028 (footnote omitted).  The California Supreme Court
23   restated the complete rule as follows:  "Employees are entitled to 10 minutes rest for
24   shifts from three and one-half hours to six hours in length, 20 minutes for shifts of
25   more than six hours up to 10 hours," and so on.  *Id.*

26   The *Brinker* decision also held that the employer must authorize and permit
27   rest breaks, but is not obligated to police breaks or to prevent an employee from
28   working through a break.  53 Cal. 4th at 1028, 1038.

If an employer violates the rest period statute, it must pay the employee a penalty equal to one hour regular pay.  Cal. Lab. Code § 226.7(c); Cal. Code Regs. tit. 8, § 11040(12)(B).

Plaintiff contends that Defendant's written policy does not comply because it omits the qualifying phrase "major fraction thereof."  Plaintiff cites the Defendant's U.S. Employee Handbook which states under the heading "TAKING A BREAK": "You will generally receive a paid 10-minute rest period for every four hours worked, or as required by state or local law."  Engleson Decl. Ex. H (ECF 44-12).

Defendant contends that its complete rest break policy is covered in the Operations Manual.  Although that document is not distributed to employees, it is available online.  Long Decl. Ex. 2 (Peek Depo. 75-86) (ECF 49-3).  Defendant uses the Operations Manual to train its managers (who are members of the proposed class).  Page 5 of that document states that company policy is "abide by applicable rest period laws."  Long Decl. Ex. 2 (ECF 49-3 at 42).  It lists California's requirement as "10 minutes for each 4 hours worked, *or major fraction thereof*, and as close to the middle of the work period as possible.  Not required if shift is less than 3½ hours."  *Id.* (emphasis added).

In *Brinker*, 53 Cal. 4th at 1032, the California Supreme Court affirmed the trial court's decision to certify a rest break class because the employer had a uniform policy that failed "to give full effect to the 'major fraction' language." Applying that principle to the instant motion, the Court finds that Plaintiff's rest break claim meets the commonality requirement.  Defendant's statements of the rule may well comply with the IWC Wage Order.  Nonetheless, that question and its answer can be litigated by common proof in a single action.

In a further attempt to defeat the motion, Defendant points to the declarations of several of store managers.  Overall, the managers testify that they know the official rule and instruct the retail workers to take rest breaks.  *E.g.*, Jensen Decl. ¶ 4 (ECF 49-9).  Defendant argues that Tapia's testimony that she did not know the rule

13CV1565

1   and was not permitted to take rest breaks raises an issue individual to her. *Brinker*,

2   53 Cal. 4th at 1052 (absent a uniform policy, class action could not proceed on basis

3   of "anecdotal evidence of a handful of individual instances").

4       This argument essentially asks the Court to weigh fact evidence. After

5   *Brinker*, however, testimony that some employees regularly took rest breaks while

6   others did not bears on the issue of individual damages. *Faulkinbury*, 216 Cal. App.

7   4th at 237. "Damage calculations alone cannot defeat certification." *Leyva v.*

8   *Medline Inds. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). When deciding the

9   procedural motion of whether to certify a class, the Court focuses on whether the

10  lawfulness of an employer's policy can be determined on a classwide basis.

11   "Claims alleging that a uniform policy consistently applied to a group of employees

12  is in violation of the wage and hour laws are the sort routinely, and properly, found

13  suitable for class treatment." *Brinker*, 53 Cal. 4th at 1033 (citations omitted).

14          **5. Former Employees**

15      California law also provides a penalty payment when an employer wilfully

16  fails to pay the final wages of an employee at the time he is discharged or quits.

17  Cal. Lab. Code § 203. Known as a "waiting time" penalty, courts treat this class

18  claim as derivative of a plaintiff's other labor law claims. *McCowen v. Trimac*

19  *Transp. Servs. (Western), Inc.*, 311 F.R.D. 579, 586 (N.D. Cal. 2015).

20      Plaintiff argues that the Court should certify this claim to the extent that any

21  other claim is certified. Pl.'s Br. 24 (citing *Seckler v. Kindred Healthcare*

22  *Operating Grp., Inc.*, No. 10-1188, 2013 WL 812656, at *7 (N.D. Cal. Mar. 5,

23  2013)). Defendant does not quarrel with this rule.

24      **C. Typicality**

25      Courts evaluate the typicality requirement of Rule 23(a)(3) by considering

26  whether the named representative and the class members have similar injuries and

27  whether those injuries arise from the same course of conduct. *Hanon v. Dataprods.*

28  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Weinberger v. Thorton*, 114 F.R.D. 599,

1   603 (S.D. Cal. 1986) (citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal.

2   1985)).

3         Defendant argues that Plaintiff has not met her burden to show that her

4   experience is similar to those of her co-workers or any member of the California

5   class.  Defendant relies on Tapia's deposition testimony that her manager was often

6   too busy to train her and that she did not receive or read training materials.  Tapia

7   Depo. 17, 21-26 (ECF 49-4).  Several managers describe their customary procedures

8   to train new employees and explain that the store's manuals are available online.

9   Defendant argues this evidence shows that Tapia's situation was "isolated and

10  anomalous."  Def.'s Opp'n Br. 5.

11        The Court is not persuaded.  The minor variations in Tapia's experience at the

12  Imperial Valley Mall do not rise to the level that would prevent her from protecting

13  the interests of workers at Defendant's other retail stores.  *See Hanon*, 976 F.2d at

14  508 (citing cases denying certification because representative would be preoccupied

15  with unique defenses); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534,

16  556-57 (C.D. Cal. 2012) (typicality requirement not met when plaintiff's need to

17  devote significant resources to proving he had standing would be detrimental to the

18  class as a whole).  Although the managers used various approaches to supervise

19  employees, these small, personal idiosyncrasies do not preclude class certification.

20  Jensen Decl. ¶ 16 (manager reminds employees to take breaks within general time

21  frames) (ECF 49-9); Tingleff Decl. ¶ 8 (she prepares a written schedule with

22  specific times for meal and rest breaks) (ECF 49-13); Wepprecht Decl. ¶ 12 (she

23  strictly enforces daily schedule and requires employees to initial it) (ECF 49-14).

24  "To be sure, [s]ome degree of individuality is to be expected in all cases, but that

25  specificity does not necessarily defeat typicality."  *Norris-Wilson v. Delta-T Grp.,*

26  *Inc.*, 270 F.R.D. 596, 605 (S.D. Cal. 2010) (citation omitted).

27        Moreover, Defendant's argument is off the mark.  "Typicality turns on the

28  nature of the claims or defenses asserted, not the facts from which they arise."  *Pena*

1   *v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 213-14 (E.D. Cal. 2015) (citation

2   omitted).  Typicality "does not mean that all claims must be identical." *Weinberger*,

3   114 F.R.D. at 603.  When the entire class asserts they were "denied a panoply of

4   work-related benefits," such as unpaid overtime compensation and penalty

5   payments, based upon uniform policies and practices, class certification is

6   warranted.  *Norris-Wilson*, 270 F.R.D. at 605.  The nature of Tapia's claims –

7   incorrect and confusing wage statements and unlawful payroll practices  – is the

8   same for all hourly workers in the proposed class.  She alleges injuries – lost wages

9   and unpaid penalty payments – experienced by other members of the potential class.

10  *Id.*

11          The purpose of Rule 23(a)(3) is to "serve as [a] guidepost[] for determining

12  whether under the particular circumstances maintenance of a class action is

13  economical and whether the named plaintiff's claim and the class claims are so

14  interrelated that the interests of the class members will be fairly and adequately

15  protected in their absence." *Falcon*, 457 U.S. at 157 n.13.  The Court is satisfied

16  that Tapia meets that requirement.

17          **D.  <u>Adequacy of Named Representative and Counsel</u>**

18          The class representative must be able to "fairly and adequately protect the

19  interests of the class." Fed. R. Civ. P. 23(a)(4).

20          Defendant does not dispute this factor.

21          The Court agrees with Plaintiff that the record shows that Tapia and her

22  counsel are able to vigorously prosecute the action on behalf of the absent class

23  members.  Tapia Decl. ¶¶ 12-17 (ECF 44-3); Sullivan Decl. (ECF 44-2); *Hanlon v.*

24  *Edwards*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The Court discerns no conflict of

25  interest with the class.  *Id.*

26          **E.  <u>Predominance of Common Issues</u>**

27          "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

28  sufficiently cohesive to warrant adjudication by representation." *Anchem Prods.,*

1 *Inc. v. Windsor*, 521 U.S. 591, 622 (1997) (citing 7A Charles Alan Wright, Arthur

2 R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 at 518-19 (2d

3 ed. 1986)) (footnote omitted); *Hanlon*, 150 F.3d at 1022.

4       Defendant contends that individualized issues predominate Plaintiff's meal

5 and rest break claims.  It contends that Tapia's experience was unique to her.

6 Defendant contends that each worker will have their own personal reason for

7 skipping a rest break to finish a sale or choosing to end a lunch break early.  *Kenny*

8 *v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008).

9       The Court rejects this analysis for the reasons stated by the *Brinker* and

10 *Faulkinbury* decisions discussed above.  The reason an employee missed a break

11 bears on the amount of damages he is entitled to recover.  53 Cal. 4th at 1040; 216

12 Cal. App. 4th at 235-37; *accord Bradley v. Networkers Int'l, LLC*, 211 Cal. App.

13 4th 1129, 1151-52 (2012).  Issues of individualized damages do not preclude

14 certification.  *Leyva*, 716 F.3d at 513-14.

15         **3.  <u>Superiority of Class</u>**

16       Plaintiff contends, and the Court agrees, that class resolution is "superior to

17 other available methods for the fair and efficient adjudication of the controversy."

18 Fed. R. Civ. P. 23(b)(3); *e.g.*, *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

19 311 F.R.D. 590, 622-23 (C.D. Cal. 2015) ("Where recovery on an individual basis

20 would be dwarfed by the cost of litigating on an individual basis, this factor weighs

21 in favor of class certification.") (citation omitted); *Millan v. Cascade Water Servs.,*

22 *Inc.*, 310 F.R.D. 593, 606 (E.D. Cal. 2015) (superiority element met in overtime and

23 meal break claims when employees would likely recover an average of $7,000,

24 which would not motivate them to file separate action).  Class resolution will be

25 efficient and manageable.  For example, Plaintiff will be able to analyze all of the

26 payroll statements in a single expert report.  Engleson Decl. ¶¶ 14-15 (ECF 44-4).

27  Borrowing language from the *Hanlon* decision, the Court finds that "[f]rom either a

28 judicial or litigant viewpoint, there is no advantage in individual members

controlling the prosecution of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." 150 F.3d at 1023.

Defendant suggests that employees can file complaints with the Labor Commissioner or bring their own actions.  Cal. Lab. Code § 98;  *Hanlon*, 150 F.3d at 1023 ("This [superiority] determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution.").

The administrative hearing is a quick procedure.  On balance, however, the class mechanism offers advantages to workers asserting wage and hour claims.  *Moore*, 311 F.R.D. at 622-24 (collecting cases and stating reasons retail workers benefit from class action); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 745 (2004) (employees often lack access to detailed records and may hesitate to jeopardize their current position or chance for advancement; small recovery may deter individuals from pursuing individual actions; separate administrative claims can result in "random and fragmentary enforcement" of the employer's duty to comply with California labor laws).  In this instance, a class action will "'achieve economies of time, effort, and expense and promote . . . uniformity of decision as to persons similarly situated.'"  *Amchem*, 521 U.S. at 615 (quoting Rule 23(b)(3) advisory committee notes to 1966 amendment).

**IV.  Analysis of Nationwide Class under the FLSA**

The FLSA requires employers to pay their employees all minimum and overtime wages.  29 U.S.C. §§ 206, 207(a)(1).  It permits an employee to bring a collective action on behalf of "other employees similarly situated" to recover unpaid wages, penalties, and attorneys' fees.  29 U.S.C. § 216(b).

Plaintiff's FLSA claim is based upon the same facts as her "failure to pay all overtime compensation," which the Court found suitable for class treatment under the Federal Rules of Civil Procedure.

13CV1565

The analysis of whether to certify a FLSA claim does not rely on Rule 23. Instead, most courts follow a two-stage process to determine whether a collection action is appropriate. *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 536 & n.4 (N.D. Cal. 2007) (noting that Ninth Circuit has not addressed issue but adopting test used by three Circuits and the majority of district courts).

At the first stage, the court determines whether the proposed class should be notified of the action. This decision is based on the pleadings, affidavits, and any available evidence. *Id.* at 536 (citing *Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004)). It is a "fairly lenient standard due to the limited amount of evidence" and the "usual result is conditional class certification." *Id.* Potential members are then notified of the pending action and given the opportunity to participate. *Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 91-93 (D. N.J. 1983) ("the FLSA describes an 'opt in' class action").

"Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class." *Leuthold*, 224 F.R.D. at 467 (citations omitted). At that time, the court applies a "stricter standard." *Thiessen v. Gen. Elec. Capital Corp*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (citation omitted). The court examines the full factual record to assess the "propriety and scope of the class." *Leuthold*, 224 F.R.D. at 467. Relevant factors include whether individual defenses predominate and whether other matters of fairness and procedure support the maintenance of a collective action. *Reeves v. Alliant Techsystems, Inc*, 77 F. Supp. 2d 242, 247 (D. R.I. 1999). "If the record facts reveal that the claimants are not 'similarly-situated,' then the court may decertify the class, and dismiss the opt-in plaintiffs without prejudice." *Id*.

Defendant asks the Court to follow the minority approach. Def.'s Opp'n Br. 22-23 & nn.48-52. These courts first require the plaintiff to demonstrate that other employees want to "opt-in." *E.g.*, *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

13CV1565

1    The Court adopts the majority view.  The suggestion that a plaintiff must

2    provide declarations from other employees is at odds with the purpose of giving

3    notice to potential plaintiffs.  *Leuthold*, 224 F.R.D. at 468.  "Bypassing the notice

4    stage" deprives others "of a meaningful opportunity to participate" in the litigation.

5    *Id.*  It also deprives the court of useful information, such as the number and type of

6    employees who choose to opt-in, which will help the court make a fair and just

7    decision at the second stage.  *Id.*  The two-stage approach is "the most equitable

8    means of proceeding."  *Id.*  If the court conditionally certifies a collection action at

9    the notice stage, the consequences to the employer "are not unduly burdensome"

10   and it can "move for decertification once the factual record has been finalized."  *Id.*

11   Defendant's concern whether there are other employees who want to join the

12   FLSA lawsuit can be addressed during the second stage.  *See id.*

13   Turning to the merits of Plaintiff's certification motion, conditional

14   certification is appropriate for the same reasons the Court certified the unpaid

15   overtime compensation claim under Rule 23.  Plaintiff has shown that there are

16   other similarly-situated employees because Defendant uses the same payroll

17   procedures at all of its stores.  *Adams*, 242 F.R.D. at 535-56 (plaintiff bears burden

18   of showing "that the putative class members were subject to a single illegal policy"

19   with some evidence beyond the pleadings).  Plaintiff has also presented evidence –

20   Tapia's time and wage records and Dr. Fountain's expert report – to support her

21   allegations that Defendant's practice results in unpaid overtime.  *Millan*, 310 F.R.D.

22   at 607.  The Court grants the motion.

23                                    Conclusion

24   Upon due consideration of the briefs and evidence, and for the reasons stated

25   above, the Court GRANTS the motion.  [Doc. No. 44]  The Court certifies two

26   classes:  (1) All current and former hourly employees of Zale Delaware Inc. d/b/a

27   Zale Corporation who were designated by Zale as nonexempt and who worked in

28   California any time between July 3, 2009 and the trial of this matter; and (2) All

current and former hourly employees of Zale Delaware Inc. d/b/a Zale Corporation who were designated by Zale as nonexempt and who worked in the United States any time between July 3, 2010 and the trial of this matter.  The Court appoints Naomi Tapia as the representative and the Sullivan Law Group, APC as class counsel.

The Court denies as moot Plaintiff's motion to file a notice of supplemental authority and to submit a copy of the expert's resume.  [Doc. No. 55]

**IT IS SO ORDERED.**

**DATED: April 6, 2015**

**Hon. Cynthia Bashant**
**United States District Judge**

13CV1565